Michael E. Stern
RUBIN, FIORELLA & FRIEDMAN LLP
292 Madison Avenue
New York, N.Y., 10017
(212) 953-2381
Attorneys for Plaintiff
OPTICAL COMMUNICATIONS GROUP, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
OPTICAL COMMUNICATIONS GROUP, INC.,

       Plaintiff,

  -against-

M/V AMBASSADOR, its engines, boilers, furniture,
tackle, apparel, etc., *in rem* and MARBULK
CANADA, INC., *in personam,*

       Defendants.
-------------------------------------------------------------x

**VERIFIED COMPLAINT**

Case No.

Plaintiff, OPTICAL COMMUNICATIONS GROUP, INC. ("OCG"), by its attorneys, RUBIN, FIORELLA & FRIEDMAN, LLP, alleges upon information and belief, as follows:

### JURISDICTION

1. This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, as more fully appears hereafter and jurisdiction exists also by diversity pursuant to 28 U.S.C. §1332.

### VENUE

2. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and venue exists pursuant to agreement of the parties.

## PARTIES

3. At all relevant times, plaintiff OCG was and is a corporation organized under and existing under the laws of the State of New York with a principal place of business at Glendale, New York.

4. At all relevant times, defendant Marbulk Canada, Inc. ("Marbulk") was and is a corporation duly organized and existing by the laws of a foreign country with a principal place of business at Calgary, Canada.

5. At all relevant times, M/V AMBASSADOR was and is a cargo vessel owned and operated by defendant Marbulk, flagged under the laws of Vanuatu and bearing IMO number 8016653.

## FACTS

6. At all relevant times, OCG was and is a fiber optic connectivity provider of telecommunications services in the New York Metropolitan area and the owner of a fiber optic submarine telecommunications cable running between Staten Island and Brooklyn, New York.

7. OCG installed the fiber optic submarine telecommunications cable pursuant to permit 2002-01066-Y1 issued by the Department of the Army, Corps of Engineers dated December 8, 2006.

8. In or about December 2007, OCG installed the fiber optic submarine telecommunications cable within an existing cable crossing area approximately 500-feet south of the Verrazano-Narrows Bridge.

9. The cable crossing area is marked on official nautical navigation charts published by the United States National Oceanographic and Atmospheric Administration.

10. On or about January 25, 2008, OCG returned the certification to the Army Corps of

Engineers evidencing that the fiber optic submarine telecommunications cable was installed in compliance with permit 2002-01066-Y1.

11. At all relevant times, Marbulk was and is the owner, operator, demise charterer, charterer or owner *pro hac vice* of the AMBASSADOR.

12. On April 11, 2010, the AMBASSADOR departed from the Brooklyn Navy Yard, Brooklyn, New York and traveled south towards the Verrazano-Narrows Bridge.

13. While the AMBASSADOR was within the marked cable crossing area south of the Verrazano-Narrows Bridge, the master of the vessel gave orders to lower the port anchor to the waterline.

14. As a result of operator error or equipment malfunction, the port anchor was released and dropped to the bottom of the navigation channel.

15. The anchor and/or anchor chain and/or anchor flukes snagged the buried fiber optic submarine cable, dragged it out of the mud to the south and eventually broke the cable in half destroying the telecommunications connection.

16. The Master of the AMBASSADOR filed a Report of Marine Accident, Injury or Death (Form CG-2692) with the United States Coast Guard dated April 13, 2010 confirming the happening of the event, stating in part:

> On April 11, 2010 the vessel proceeded from Brooklyn #3 Wet Berth to Gravesend Bay Anchorage ... at 10:27 passed under Verrazano Bridge. Commenced preparation of Port Anchor to let go, lowering up to 1 meter above the water. Proceeded with Dead Slow Ahead... Port anchor incidently let go and around 1.5 shackles of cable paid away in teh water... commenced to heave up anchor... anchor awash, reported spoiled with old wire rope.

17. By virtue of the damage to the fiber optic submarine cable, OCG incurred and

-3-

continues to incur costs to locate, recover and make immediate temporary repairs to the cable.

18. By virtue of the damage to the fiber optic submarine cable, OCG will have to replace the existing temporary and damaged cable and will incur substantial costs to make these permanent repairs to the broken cable.

19. By virtue of the damage to the fiber optic submarine cable, customers of OCG suffered service interruptions until temporary repairs were made by OCG.

20. By virtue of the service interruptions to customers of OCG, OCG was required to and did reimburse its customers for service interruptions pursuant to the terms of the contracts between OCG and its customers.

### COUNT I

### NEGLIGENCE OR UNSEAWORTHINESS
*(In Personam)*

21. Plaintiff repeats, and realleges the allegations set forth in paragraphs 1 through 20 hereof as if more fully set forth herein.

22. The damage to OCG's fiber optic submarine cable was proximately caused by the negligence or gross negligence of Marbulk, *in personam*, its crew, officers, agents and/or pilots, with no negligence or culpable conduct on the part of OCG contributing to the damage.

23. As a result of the foregoing negligence, unseaworthiness, breaches, faults, violations, acts and/or omissions of Marbulk, plaintiff has suffered damages including but not limited to the damage to the fiber optic cable and the costs to locate, recover, repair and replace the fiber optic cable, reimbursements to customers and damage to plaintiff's business relations.

24. By reason of the premises, and as a direct and proximate result of defendant's

negligence, unseaworthiness, breaches, faults, violations, acts and/or omissions, plaintiff has suffered damages in an amount in excess of $3,500,000, as nearly as same can now be estimated, no part of which has been paid although duly demanded. OCG, by virtue

## COUNT II

### NEGLIGENCE OR UNSEAWORTHINESS
### (*In Rem*)

25. Plaintiff repeats, and realleges the allegations set forth in paragraphs 1 through 24 hereof as if more fully set forth herein.

26. The Standard Steamship Owner's Protection and Indemnity Association (Bermuda) Limited, Marbulk's liability insurer, issued a Letter of Undertaking dated May 19, 2010 in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000) in favor of Optical Communications Group, in exchange for OCG's agreement not to arrest or otherwise restrain the AMBASSADOR or other property of Marbulk.

27. The damage to OCG's fiber optic submarine cable was proximately caused by the negligence, gross negligence and/or unseaworthiness of the M/V AMBASSADOR, *in rem*, and Marbulk, *in personam*, its crew, officers, agents and/or pilots, with no negligence or culpable conduct on the part of OCG contributing to the damage.

28. As a result of the foregoing negligence, unseaworthiness, breaches, faults, violations, acts and/or omissions of Marbulk and the M/V AMBASSADOR, plaintiff has suffered damages including but not limited to the damage to the fiber optic cable and the costs to locate, recover, repair and replace the fiber optic cable, reimbursements to customers and damage to plaintiff's business relations.

29. By reason of the premises, and as a direct and proximate result of defendant's negligence, unseaworthiness, breaches, faults, violations, acts and/or omissions, plaintiff has suffered damages in an amount in excess of $3,500,000, as nearly as same can now be estimated, no part of which has been paid although duly demanded.

**WHEREFORE**, plaintiff prays for the following:

(i) that a warrant of arrest and process issue against the M/V AMBASSADOR, its hull, engines, generators etc, *in rem*;

(ii) that all persons having or claiming an interest therein may be cited to appear and answer for the aforesaid matters;

(iii) that OCT be decreed to have a lien upon the M/V AMBASSADOR and that such lien be foreclosed in accordance with the law and that the vessel be sold in payment and all other such amounts due;

(iv) that judgment be entered in favor of plaintiff and against defendants in an amount in excess of $3,500,000, as nearly as same can now be estimated, plus interest and costs, together with such other and further relief as this Honorable Court may deem just and proper.

Dated: New York, New York
June 28, 2011

RUBIN, FIORELLA & FRIEDMAN LLP

By: _____
Michael E. Stern (MS9113)
Attorneys for Plaintiff
OPTICAL COMMUNICATIONS GROUP, INC.
292 Madison Avenue, 11th Floor
New York, New York 10017
(212) 953-2381

TO: Blank Rome LLP
Richard V. Singleton II
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
Tel.: 212-885-5166
Fax: 917-332-3734
E-mail: RSingleton@BlankRome.com

# VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

Michael E. Stern, an attorney admitted to practice law in the State of New York, affirms:

That the undersigned an associate of the firm of RUBIN, FIORELLA & FRIEDMAN LLP, attorneys of record for plaintiff, Optical Communications Group, Inc., in the within action; that the undersigned has read the foregoing SUMMONS and VERIFIED COMPLAINT knows the contents thereof; that the same are true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief; and as to those matters affirmant believes them to be true.

The grounds of affirmant's belief as to all matters not stated to be upon affirmant's own knowledge are investigative material contained in affirmant's file.

This affirmation is made by the undersigned because plaintiff's offices are located in a County other than the County in which your affirmant's office is located.

The undersigned affirms that the foregoing statements are true, under the penalty of perjury.

Dated:   New York, New York
         June 28, 2011

_____
MICHAEL E. STERN