UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
OPTICAL COMMUNICATIONS GROUP, INC.,

                                       Plaintiff,          **RULE 56(d) DECLARATION**

                 -against-
                                                          Case No. 11-cv-04439-NRB FM
M/V AMBASSADOR, its engines, boilers,
furniture,tackle, apparel, etc., *in rem* and
MARBULK CANADA, INC., *in personam,*

                                       Defendants.
-------------------------------------------------------------x

     **I, MICHAEL E. STERN,** declare under penalty of perjury under the laws of the United

States of America that:

1.     I am a member of the firm of RUBIN, FIORELLA & FRIEDMAN LLP, attorneys for

plaintiff OPTICAL COMMUNICATIONS GROUP, INC. ("OCG"). I am familiar with the facts

contained in this Declaration, based upon personal knowledge and/or review of the files maintained

by the Firm.

2.     OCG submits this Rule 56(d) Declaration to enable it to identify facts essential to its

opposition to defendants' proposed summary judgment motion, which it has not been permitted

to do so to date, including, among other things:

-     *The exact location of the Vessel when the anchor was improperly released*

-     *The nautical chart used by Defendants*

-     *The cause of the improper release of the anchor*

-     *Whether either the master or the pilot gave permission to release the anchor*

-     *Defendants' knowledge of custom and practice regarding anchoring in a main*

*navigation channel or in and near a marked cable crossing area*

- *Whether the submarine cable was intact when hauled out of the water*

### SUMMARY OF FACTS

3.      On or about December 2007 or January 2008, OCG installed a fiber optic submarine telecommunications cable within an existing cable crossing area south of the Verrazano-Narrows Bridge.  The cable crossing area is marked on official nautical navigation charts published by the United States National Oceanographic and Atmospheric Administration.  A copy of the relevant chart excerpts is annexed hereto as **Exhibit "1"**.

4.      On April 11, 2010, defendants' vessel, the M/V AMBASSADOR, departed from the Brooklyn Navy Yard and traveled south in the main navigation channel under the Verrazano-Narrows Bridge en route to Graves End Bay.  The vessel was intending to anchor at the Graves End Bay anchorage.

5.      The United States Coast Guard "REPORT OF INVESTIGATION INTO THE CIRCUMSTANCES SURROUNDING THE INCIDENT INVOLVING **HAZARDOUS OPERATION; M/V AMBASSADOR**" [bold in original] reported:

- At or about 10:27 a.m. on April 11, 2010, while the AMBASSADOR was under the Verrazano-Narrows Bridge and within the marked cable crossing area south of the Verrazano-Narrows Bridge, the master of the vessel gave orders to lower the port anchor to the waterline.

- As a result of operator error or equipment malfunction, the port anchor was released and dropped to the bottom of the navigation channel.

- The position of the anchor drop was marked on a navigation chart.

- The anchor snagged the buried fiber optic submarine cable and dragged it out of the mud.

2

- The vessel made several attempts to lower and to lift the anchor to free the cable.

- OCG's telecommunications cable was severed by the anchor.

*See*, Report of Investigation (**Exhibit "2"**).  To the best of OCG's knowledge these facts are not disputed by defendants.

## PROCEDURAL HISTORY

6.      OCG filed suit in June 2011, seeking compensatory damages arising out of the destruction of its submarine cable.  Defendants filed their answer on July 20, 2011.

7.      A Rule 16 initial conference was held on August 16, 2011.  The parties submitted a joint proposed scheduling order to the Court prior to the conference.

8.      At this conference, Defendants did not dispute the facts concerning the anchor drag and destruction of OCG's telecommunications cable.  Instead, defendants stated that, as a matter of fact, since the forward-most section of the vessel (i.e., perhaps 60 feet of the 729 foot long vessel) was outside of the cable crossing area when the anchor was inadvertently released, the cable must also have been outside of the cable crossing area.  Defendants argued that, as matter of law, if they could establish that the cable was not within the cable crossing area where it was struck, then the vessel could have no liability as a matter of law for destroying the cable.  OCG maintained that defendants' position was factually unsupported, incorrect under applicable and governing maritime law and inconsistent with the standard of care governing anchoring in and near cable crossing areas and other potential obstructions or hazards.[1]

9.      OCG was then denied the right to conduct discovery.  The Court ordered that the *only*

---

[1]  The standard of care applicable to destruction of submarine cables differs from claims involving land based buried telecommunications cables.

3

discovery to be conducted was the deposition of Mark Sherry, the individual who installed the cable for OCG.

10.     The deposition was conducted in October 2011.  Mr. Sherry then produced a diagram which he testified was an "as laid" diagram, which shows the cable having been laid a significant distance to the south of the cable crossing area.  (A copy of this diagram is attached as **Exhibit "3"**).  OCG maintains that this diagram is inaccurate and does not accurately depict the location of the cable on the date of the incident.

11.     Based on this diagram, defendants requested permission to file a motion for summary judgment.[2]

12.     At a January 27, 2012 conference, the Court permitted OCG to file this Declaration pursuant to Rule 56(d) prior to any summary judgment motion to set forth the facts and discovery needed.

## DISCOVERY NEEDED

13.     Defendants' entire position is premised on knowing the exact location of the AMBASSADOR at the time the anchor was improperly released.  In order to establish the position, defendants rely solely on the time when what appears to be the anchor is heard rumbling on the vessel's SVDR sound recording.  OCG believes that discovery will show that the anchor started to run free a few seconds *before* the rumbling noise is recorded by the SVDR.  Further, and based on the fact that hawse pipe (where the anchor is located on the bow) was within 20 meters (about 66 feet) of the cable area (the vessel is 729.1 feet long) when the rumbling is first heard, OCG believes that discovery will show that the anchor was in fact released within the cable area.  As such, the

---

[2] OCG will discuss in opposition to any future summary judgment motion that defendants are wrong that the law insulates the vessel from liability in this case despite defendants' clear failure to exercise due care.

exact location of the vessel has not been but needs to be established.

14.     A witness statement from one of the vessel crew members annexed to the Coast Guard report on the HAZARDOUS OPERATION indicates that the "*time of incident and position were fixed on the navigation chart*." (**Exhibit "2"**) OCG is clearly entitled to this critical information. The navigation chart has not been produced.

15.     A finding of negligence requires, among other things, proof that the defendants failed to take steps to make the vessel and her crew seaworthy. The facts demonstrate that the anchor windlass clutch was not engaged when the crewman started to lower the anchor to the water line. As a result, the anchor was released to the bottom. These facts may not be in admissible form and, as a result, OCG needs discovery from witnesses with firsthand knowledge.

16.     The facts suggest that neither the New Jersey pilot on board the vessel nor the master gave orders to release the anchor in the main navigation channel and the cable crossing area. OCG believes it relevant to determine that the master would not have given such an order and why he would not and did not do so.

17.     Defendants argue that as a matter of maritime law, the nautical chart establishes a standard of care that permits a vessel to unintentionally release its anchor even one foot outside of a marked cable crossing area, and destroy a submarine cable without incurring any liability. The nautical chart, however, does not create such a standard of care. To the contrary, the nautical chart and maritime law and practice mandate that mariners exercise *extreme caution* not just within the cable crossing area but in any areas where cables *may exist*.

18.     OCG believes that discovery from the master will establish that the master has knowledge of this applicable standard of care and governing practice regarding anchoring in and near a cable

5

crossing area.[3]

19.     In addition, the vessel apparently needed to repeatedly raise and lower its anchor to release the submarine cable from the anchor flukes.  OCG is entitled to discovery as to whether the cable was intact and unbroken when first raised from the water and whether the vessel, in disregard for preventing damage to property, destroyed the cable in efforts to continue on its course.

20.     Without this discovery, OCG cannot fully support either its opposition to defendants' motion for summary judgment or its own motion for summary judgment.

21.     OCG recognizes the cost and potential difficulty involved in arranging for and conducting the depositions of crew members on a vessel, who are foreign nationals (Ukrainian); and, who may no longer be employed by the vessel.  As a compromise, OCG would be willing to forego depositions at this point in the proceedings if defendants are willing to stipulate to all relevant facts.

## CONCLUSION

22.     OCG submits that discovery is necessary and will establish the existence of genuine issues of material fact as to matters relevant to defendants' proposed summary judgment, including: (i) the location of the vessel when the anchor was improperly released; (ii) that the master did not and would not have authorized release of the anchor in the main navigation channel and in and

---

[3] The relevant navigation chart, Chart 1233, cautions mariners to exercise "extreme caution" in the areas of the chart and not just within the dotted lines:

CAUTION
SUBMARINE PIPELINES AND CABLES
Additional uncharted submarine pipelines and submarine cables may exist within the area of this chart.  Not all submarine pipelines and submarine cables are required to be buried, and those that were originally buried may have become exposed.  Mariners should use extreme caution when operating vessels in depths of water comparable to their draft in areas where pipelines and cables may exist, and when anchoring, dragging or trawling.
**Exhibit "1"**

around a marked cable crossing area; (iii) whether the windlass clutch mechanism was not engaged due to mechanical or crew error; (iv) what steps defendants took to prevent the premature and improper release of the anchor; and (v) whether defendants took any steps to prevent the destruction of the submarine cable after dragging it from out of the seabed.

Dated:  February 27, 2012

Michael E. Stern

## CERTIFICATE OF SERVICE

**MICHAEL E. STERN** certifies as follows:

I hereby certify that a copy of the **RULE 56(d) DECLARATION** was served electronically on February 27, 2012 upon:

Blank Rome LLP

Richard V. Singleton II

The Chrysler Building

405 Lexington Avenue

New York, NY 10174-0208

Tel.: 212-885-5166

Fax: 917-332-3734

E-mail: RSingleton@BlankRome.com

Executed:      New York, New York
               February 27, 2012


                                   _____
                                   **MICHAEL E. STERN**