UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
OPTICAL COMMUNICATIONS GROUP, INC.,

                                  Plaintiff,

                -against-
                                                               Case No. 11-cv-04439-NRB FM
M/V AMBASSADOR, its engines, boilers, furniture,
tackle, apparel, etc., *in rem* and MARBULK
CANADA, INC.*, in personam,*

                                  Defendants.
-------------------------------------------------------------x


## OPTICAL COMMUNICATIONS GROUP, INC.'S
## REPLY MEMORANDUM OF LAW


Of Counsel:
Michael E. Stern  (MS 9113)


**RUBIN, FIORELLA & FRIEDMAN LLP**
292 Madison Avenue, 11th Floor
New York, NY 10017
212-953-2381
357-7842

## PRELIMINARY STATEMENT

On April 11, 2010, defendants' 700-foot Vanuatu flagged ship M/V AMBASSADOR was crossing a marked cable area in New York Harbor's main ship channel in the vicinity of the Verrazano Bridge. The ship's crew prematurely dropped the bow anchor and destroyed plaintiff Optical Communication Group, Inc.'s ("OCG") submerged fiber optic cable. These facts are undisputed.

Defendants contend they are not liable because certain electronic information suggests that the anchor positioned at the bow of the ship was "*some 33 yards*" beyond the cable area marked by a "dotted line" on the nautical chart when it was dropped. Defendants sidestep the fact that the nautical chart for New York Harbor specifically cautions mariners not to rely on the dotted line on the chart for the exact position of submerged pipelines or cables, but instead, to "**use *extreme caution* when operating vessels... in areas where pipelines or cables may exist, and when anchoring, dragging or trawling.**"

To short circuit discovery of any relevant facts, defendants suggest that the testimony of the ship's Ukrainian crew and the local harbor pilot is irrelevant. Because one source of information from defendants' ship allegedly locates the bow of the vessel slightly over a dotted-line on a chart, should not terminate OCG's right to discover other material information in the vessel's sole control that contradicts that one datum, including the statements of the crew to the Coast Guard.

Defendants further contend that "evidence" submitted by the person who installed the cable for OCG establishes as fact that the cable was not lying precisely within the dotted-line cable area. Documents submitted by plaintiff contradict this document. And, this so-called "as

laid" chart is of questionable veracity—Mark Sherry, the witness subpoenaed by defendants, testified to being owed in excess of $700,000 from OCG.[1]  It is also grossly inaccurate, and shows that the cable was *several hundred yards* to the south of the cable field and well south of the vessel's location at the time of the anchor drop.  Thus, the actual position of the cable is another question of fact which must be established.

To this point, defendants have submitted only a "factual" affidavit of defendants' counsel to support their position.  This is clearly not admissible in evidence.  Rule 1 of the Federal Rules provides that discovery should be "administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Defendants' attempt to block any basic discovery is quite the opposite of "just".

## POINT I

## APPLICABLE LAW

In the ordinary course, a party seeking discovery pursuant to Rule 56 (d) had the opportunity to conduct discovery and seeks "additional" discovery needed to defeat a summary judgment motion.  Here, OCG has been denied any discovery.  OCG should be provided with "the opportunity to discover information that is essential to [its] opposition" to a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986).  Summary judgment for defendants would be premature.  *See, Foresta v. Centerlight Capital Management,* Fed.Apx. 44 (2d Cir. 2010); *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) (reversing summary judgment where "the district court did not wait until 'after discovery' to grant summary judgment"); *Carr v. Health Insurance Plan of Greater New*

---

[1]   Indeed, after his subpoenaed deposition, Mark Sherry called the owner of OCG and bragged how he had just made it so OCG would not collect any damages in this lawsuit.

*York, Inc.*, 111 F. Supp.2d 403, 414 (S.D.N.Y. 2000) (rejecting summary judgment to allow discovery).

The discovery sought by OCG is directly related to the matters it needs to prove in this maritime negligence action: (i) the existence of a duty of care; (ii) that defendants failed to exercise reasonable care under the circumstances; and (iii) damages proximately caused by that breach of a duty. Defendants concede damages and "but for" causation but reject that the ship owed plaintiff a duty and that it breached that duty.

A duty exists when injury is foreseeable. *McAllister Towing of Virginia, Inc. v. U.S.,* 2012 W.L. 1120680 *12 (E.D.Va Apr. 3, 2012). Defendants cannot deny that damage to a cable or pipeline is foreseeable when a vessel mistakenly drops a huge and heavy anchor and anchor chain anywhere near a marked cable area. Nonetheless, counsel argues (without any legal authority) that the ship had the unfettered right to drop anchor within 30 yards of a cable area, and that discovery from the crew is therefore irrelevant. To the contrary, OCG is entitled to depose the master and crew, *inter alia*, to establish that it was "foreseeable" that damage to a cable could occur by prematurely dropping anchor where it was dropped; to review the ship's nautical chart in use at the time or other navigation resources aboard the vessel.

OCG's experts will testify, and presumably the AMBASSADOR's master will agree, if deposed, that a prudent mariner never anchors a 700-foot ship within the vessel's "swing circle" (at least the length of the vessel) when an obstruction or possible obstruction (i.e., a submerged cable) lies within the "swing circle", as it did here. Likewise, discovery is needed to determine what steps the vessel took to prevent the anchor from prematurely dropping in a busy waterway with a cable area located directly underneath the ship.

Deposition of the master will also establish: (i) the master's knowledge that individual cables are not specifically marked on a nautical chart where, as here, the chart has a cable area; and (ii) that, because it is impossible to know the exact location of a submerged cable in a marked cable area, a ship captain must use "extreme caution" when anchoring in or near a cable area. This testimony is relevant because it will help establish the admiralty law "presumption of fault" called the *Oregon Rule* that exists when a moving vessel or its components (i.e., the AMBASSADOR) collides with a stationary object.  To rebut this presumption, the *vessel* must come forward with evidence that it was *without* fault, or the "allusion" was the sole fault of the stationary object.  The burden is a heavy one.  *McAllister Towing of Virginia, Inc. v. U.S.,* 2012 W.L. 1120680 *12 (E.D.Va Apr. 3, 2012).  This presumption even applies when the moving vessel, as here, strikes a sunken or hidden object, when there is knowledge on the part of the master that a submerged object could be present.  *Id.* 2012 W.L. 1120680 *12; *Pennzoil Producing Co. v. Offshore Exp., Inc.*, 943 F.2d 1465 (5th Cir. 1991).  It is submitted that defendants will be unable to rebut this presumption of fault.[2]

## POINT II

## DISCOVERY NEEDED

In addition to depositions, OCG requires discovery to challenge what defendants suggest is "the exact location of the vessel when the anchor was *improperly* released".  *See,* Defendants' Memo at p. 2.  On this critical point, defendants state that the only "evidence" that exists is the ship's SVDR data.  And, in a self-serving affidavit, counsel basically "testifies" that this data is

---

[2]  In actuality, defendants' position that liability does not exist because the cable was allegedly improperly laid is in the nature of affirmative defenses or comparative negligence.  Defendants, and not plaintiff, have the burden of proof on these positions.  *See, McAllister Towing, supra.*

incontrovertible.[3]   But even the SVDR data itself has not been tested for accuracy.  Defendants take issue with OCG's inability to articulate what this evidence might be, and argues essentially that this proves no evidence exists.  OCG has had no access to information to determine, *inter alia,* how the SVDR system was maintained and its accuracy.  Indeed, from documents obtained prior to litigation, it was learned that the SVDR was retrofitted just days before the accident and that this was the first voyage with the retrofit system.  This is critical information to be developed in discovery.

In addition, and based on what little information that OCG has received about what happened that day (which information was produced by the Coast Guard and not defendants) it is clear that the SVDR evidence is not uncontroverted.

### 1. The SVDR Does Not Prove Vessel Position.

- The SVDR is not, as defendants argue akin to flight data recorders on commercial airliners.  It is a sound based recording system comprised of a series of microphones placed throughout the vessel and connected into the vessel Global Positioning Systems (GPS).  What defendants rely upon as proof is listening to a sound recording and trying to determine when the anchor sounds like it is beginning to move forward on the bow, and then extrapolating time and position from that "sound".  This "evidence" is fraught with uncertainties, including, but not limited to, (i) the listener's ability to determine the appropriate "sound" from this recording of multiple microphones located vessel wide; (ii) whether the anchor

---

[3]  Affidavits of counsel made without personal knowledge are improper and should be rejected.  *See, Ugarte v. Johnson*, 40 F. Supp.2d 178, fn. 1 (S.D.N.Y. 1999) (collecting cases).

was already at water's edge when released; (iii) the margin of error of the GPS system (i.e., 3 meters, 5 or 15 meters); (iv) the number of satellites the GPS was tracking at the time of the incident (which affects its accuracy); (v) the fact that sound has to travel from the ship's bow over 600- 650 feet to the sensors on the bridge; and (vi) was this "sound" that defendants rely upon the first movement of the anchor.  If this "sound" was not the first movement of the anchor, as OCG's experts believe, then defendants' claim that the anchor fell "exactly somewhere near 33 yards" from the cable crossing is inaccurate.

- Defendants are wrong to claim that no evidence contradictory to the SVDR data exists.  In fact, the contemporaneous statements of the crew given to the U.S. Coast Guard and the ship's own nautical chart suggest that the anchor may have been dropped as much as 3 or 4 minutes earlier than indicated by the SVDR. Further, based solely on counsel's "testimony", the ship's nautical chart contradicts the SVDR data by positioning the anchor drop *400 yards to the south* of the cable area.

- Defendants have knowingly withheld production of the nautical chart.  Indeed, in a display of gamesmanship, defendants state that if OCG wanted production of the marked nautical chart, OCG should have asked.  Defendants cannot rely on the chart and at the same time not produce it.  Plus, the nautical chart in use aboard the ship is a highly relevant document that should have voluntarily been produced in a marine casualty claim.

## 2. *Defendants have not established position of Cable*.

Defendants have not established that the cable was laid outside of the cable area.

- OCG has produced documentation that shows that the fiber optic cable was laid within the cable area, including where the ship was located when it negligently dropped its anchor.  This evidence includes the documents submitted to the United States Army Corp of Engineers and the Coast Guard.

- Defendants contend that the so-called "as laid" cable chart produced at deposition by Mark Sherry establishes that the cable was not laid as shown by plaintiff's documentation.  The problem with defendants' position is that the document produced by Mark Sherry is contradictory to the documents produced by (and if deposed, the testimony of OCG's Brad Ickes).  This creates an issue of fact which should not be resolved in defendants' favor on a motion for summary judgment. *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (on a motion for summary judgment, the Court must assess the "evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party").

- Defendants argue that the fact that the salvage operation and side-scan sonar performed after defendants destroyed the cable was performed to the south of the cable area, proves that the cable was laid outside the cable area.  This is not true. OCG was required by the Coast Guard to locate and remove the cable from the sea bed to prevent a possible hazard to navigation. The M/V AMBASSADOR was travelling north to south, and thus, the cable could only have been dragged in the

same direction, i.e., from north of the cable crossing line to south of the cable crossing line.  OCG did not hire salvors to perform a forensic search of the sea bed, but to prevent the several thousand feet of armored cable from getting caught whether on the propellers of any of the numerous commercial vessels that use the Ambrose Channel on a regular basis.

These points clearly show that numerous genuine and material facts exist which must be resolved in discovery.

## CONCLUSION

For the reasons set forth above, OCG is entitled to discovery. It is respectfully submitted that OCG's motion for discovery be granted in its entirety and the Court enter a discovery schedule.

Dated: New York, New York
          April 30, 2012

                                        RUBIN, FIORELLA & FRIEDMAN LLP
                                        Attorneys for Plaintiff
                                        OPTICAL COMMUNICATIONS GROUP, INC.,

                                        By: _____
                                              Michael E. Stern
                                        292 Madison Avenue, 11th Floor
                                        New York, New York  10017
                                        Ph: 212 953-2381   Fax: 212 953-2462
                                        Our File No: 727-15438